
02/25/2013

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **WILLARD T. SCOTT, II** | § | Case No. 11-90185 |
| xxx-xx-2395 | § | |
| | § | |
| *Debtor* | § | Chapter 7 |

| | | |
|---|---|---|
| DR. ROBERT WOODROME and | § | |
| WOODROME MEDICAL, P.A. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Adversary No. 11-9017 |
| | § | |
| WILLARD T. SCOTT, II | § | |
| | § | |
| *Defendant* | § | |

**MEMORANDUM OPINION REGARDING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT[1]**

ON THIS DATE the Court considered the Motion for Summary Judgment filed by the Plaintiffs, Dr. Robert Woodrome and Woodrome Medical, P.A. ("Plaintiffs"), in the above-referenced adversary proceeding. Plaintiffs' Complaint to Determine Dischargeability of Debt (the "Complaint") seeks a determination that the debt owed by the Defendant, Willard T. Scott, II ("Debtor"), the Debtor in the underlying bankruptcy, is excepted from the scope of his Chapter 7 discharge pursuant to the alternative provisions of 11 U.S.C. §§ 523(a)(2)(A), (4), and (6). Using the Debtor's failure to respond to

---

[1] This Memorandum Opinion is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or other evidentiary doctrines applicable to the specific parties in this proceeding.

certain Requests for Admissions as an evidentiary foundation, Plaintiffs claim that those Requests, now deemed admitted by operation of law, support a finding of non-dischargeability under any of the three sections. Plaintiffs' Motion for Summary Judgment avers similarly, requesting judgment as a matter of law on all three claims. The Debtor filed no response to the Plaintiffs' Motion. Upon due consideration of the pleadings, the proper summary judgment evidence tendered, and the relevant legal authorities, the Court finds that Plaintiffs' requests for judgment as a matter of law as to §§ 523(a)(2)(A) and (a)(4) must be denied due to the existence of genuine issues of material fact; however, the uncontested material facts establish that the alleged debt owed to Plaintiffs by the Debtor should be declared non-dischargeable as a matter of law under § 523(a)(6).[2]

**Factual and Procedural Background**

On or about November 2, 2010, Plaintiffs Dr. Robert Woodrome and his professional association, Woodrome Medical, P.A. filed suit against the Debtor and another entity, Huntington State Bank, in the United States District Court for the Southern District of Texas. Plaintiffs' complaint in the Southern District action alleged that the Debtor committed fraud by making unauthorized electronic transactions from bank accounts held by Plaintiffs at both the Huntington Bank and at another financial

---

[2] This Court has jurisdiction to consider the Plaintiffs' Complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I).

institution. The progress in the Southern District Litigation was interrupted on June 2, 2011, when the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.[3] Plaintiffs then continued their pursuit of the Debtor in this Court through the complaint in this adversary proceeding on October 14, 2011, which seeks a declaration of non-dischargeability as to the debt purportedly owed by the Debtor to Plaintiffs. The Plaintiffs subsequently filed the present Motion.

The summary judgment evidence tendered by Plaintiffs with regard to their Motion includes unanswered requests for admissions served on the Debtor on April 3, 2012 by certified mail, with a return receipt evidencing the Debtor's receipt of the discovery on April 6, 2012.[4] According to the affidavit of Plaintiffs' attorney, Branch M. Sheppard, the Debtor failed to respond to those requests within the required 30 days of their service.[5] The Sheppard affidavit also references the fact that the Debtor acknowledged his receipt of those admission requests during the Court's May 21, 2012 telephonic scheduling conference.[6] However, in the interests of justice, as a result of the withdrawal of the Debtor's counsel in this adversary proceeding, the Court extended the Debtor's response deadline to the requests for admissions previously sent to June 29, 2012. After

---

[3] The Debtor was subsequently severed from the Southern District action.

[4] Plaintiffs' Ex. C.

[5] Plaintiffs' Ex. D.

[6] *Id.*

that conference, Plaintiffs re-sent the written discovery to the Debtor.[7] Even with the extended response period, Plaintiffs did not receive any objections or responses to their Requests for Admission from the Debtor.

Accordingly, among other things, the Requests for Admissions[8] to which no response was tendered by the Debtor included the following admissions:

1. The Debtor resides at 142 CR 3465, Broaddus, Texas 75929.[9]

2. The Debtor was the branch manager and vice president for Huntington State Bank in Nacogdoches, Texas until such time as he was terminated for cause.[10]

3. Plaintiff Dr. Robert Woodrome held two accounts, a personal checking account (no. xxxxx881) and a savings/money market account (no. xxxxx793), at Huntington State Bank.[11]

4. Plaintiff Woodrome Medical P.A. held two accounts, an operating account (no. xxxxx789) and a savings/money market account (no xxxxx056), at Huntington State Bank.[12]

5. Plaintiff Dr. Robert Woodrome also holds an account at First State Bank ending in account number xxxxx917.[13]

---

[7] Plaintiffs' Ex. C.

[8] Plaintiffs' Ex. A: "Plaintiffs' First Set of Interrogatories, Requests for Production, and Requests for Admission to Plaintiff."

[9] *Id*. at 10, Request for Admission No.1.

[10] *Id*. at 10-11, Requests for Admission Nos. 3-4, 6-7.

[11] *Id*. at 10-11, Requests for Admission Nos. 12-13.

[12] *Id*. at 11, Requests for Admission Nos. 14-15.

[13] *Id*. at 12-13, Requests for Admission Nos. 17-19.

6. Plaintiff Dr. Robert Woodrome's mortgage, car note, and several business loans are with Huntington State Bank.

7. The Debtor is indebted to Plaintiff Dr. Robert Woodrome in the amount of at least $103,063.07.[14]

8. In July 2010, Huntington State Bank informed Plaintiffs that there had been questionable activity associated with his accounts. Plaintiff Dr. Robert Woodrome met with officials from Huntington, including internal auditor Janey Longacre and chief executive officer Kenneth Marshall, to review this activity.[15]

9. Huntington presented Dr. Robert Woodrome with a spreadsheet entitled "Entries from Dr. Woodrome's accounts made by Will Scott."[16]

10. The spreadsheet indicated that the Debtor created fraudulent drafts on each of Plaintiffs' four Huntington accounts disguised as standard transactions such as mortgage and car payments.[17]

11. The Debtor deleted normal, expected transactions, such as a mortgage payment or car payment, and created a new transaction for the same amount with the same title as the original transaction.[18]

12. The Debtor diverted Plaintiffs' funds from the original payee to an undisclosed third party.[19]

---

[14] *Id*. at 13, Request for Admission No. 20.

[15] *Id*. at 14, Requests for Admission Nos. 25-27.

[16] *Id*. at 14, Request for Admission No. 28.

[17] *Id*. at 14-15, Requests for Admission Nos. 29-31.

[18] *Id*. at 15, Request for Admission No. 32.

[19] *Id*. at 15, Request for Admission No. 33.

13. The Debtor intercepted any attempt by Huntington to notify Plaintiffs of the missing funds (from the perspective of the original payee).[20]

14. Plaintiffs did not authorize any of the transactions represented on the spreadsheet.[21]

15. Plaintiffs sued the Debtor (and others) in the United States District Court for the Southern District of Texas under Civil Action No. 4:11-cv-04290 for, *inter alia*, breach of contract, common law fraud, violations of the Electronic Funds Transfer Act, unjust enrichment, statutory fraud, and for money had and received.[22]

16. The Debtor committed common law fraud, statutory fraud, and violations of the Electronic Funds Transfer Act, was unjustly enriched, and owes Plaintiffs actual, statutory, and exemplary damages in addition to the attorneys' fees and costs associated with prosecuting this action.[23]

17. The Debtor obtained Plaintiffs' funds by deleting normal, expected transactions from Plaintiffs' accounts, such a mortgage or car payment, and replacing those transactions with similarly-titled transactions for the same amount payable to a different, undisclosed third party.[24]

18. The Debtor acted with the intent to harm Plaintiffs and caused Plaintiffs to suffer substantial injury.[25]

---

[20] *Id*. at 15, Request for Admission No. 34.

[21] *Id*. at 15, Request for Admission No. 35.

[22] *Id*. at 16-17, Requests for Admission Nos. 37-45.

[23] *Id*. at 18-19, Requests for Admission Nos. 46-53.

[24] *Id*. at 21, Requests for Admission Nos. 63-65.

[25] *Id*. at 22, Requests for Admission Nos. 69, 71.

19. The Debtor received the funds diverted from Plaintiffs' accounts and used them for his own benefit.[26]

On the basis of the admitted facts and other summary judgment evidence presented in the Motion, the Plaintiffs seek the entry of a summary judgment on their claims.

## Discussion

*Summary Judgment Standard*

Plaintiffs bring their Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56, which provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c).[27] Affidavits alone, however, "cannot preclude summary judgment unless they contain competent and otherwise admissible evidence." *Chambers v. Sears Roebuck and Co.* 428 Fed. Appx. 400, 408 (5th Cir. 2011) (*citing* FED. R. CIV. P. 56(e)).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the

---

[26] *Id*. at 23, Requests for Admission Nos. 77-79.

[27] Pursuant to the scheduling order issued in this adversary proceeding, motions for summary judgment are required to comply in format and content with Local District Court Rule CV-56 and such motions shall be decided under the procedures stated therein.

"pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials do not establish the ... presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

In ruling on a summary-judgment motion, the court must resolve all ambiguities and draw all inferences from the underlying facts in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the court identifies a material factual dispute, the court must deny the motion for summary judgment and proceed to trial on that issue. *Envtl. Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir.1991). On the other hand, the nonmovant may not rest on mere allegations or denials, but must set forth, by appropriate summary judgment evidence, specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). If the record, taken as a whole and with inferences viewed in a light most favorable to the nonmovant, could still not result in a judgment for the nonmovant under governing law, summary judgment is

appropriate.

The manner in which the necessary summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial. If, as in this instance, the burden of persuasion rests on the moving party, "that party must support its motion with credible evidence– using any of the materials specified in Rule 56(c)– that would entitle it to a directed verdict if not contradicted at trial. *Celotex*, 477, U.S. at 331. Upon a *prima facie* showing of entitlement to judgment as a matter of law, the nonmovant may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson,* 477 U.S. at 248-49 (*citing* FED. R. CIV. P. 56(e)). If the nonmoving party cannot muster sufficient evidence to demonstrate a genuine issue of material fact, a trial would be useless. The substantive law will identify which facts are material. *Id.*

In this case, Plaintiffs bear the burden to present a *prima facie* case for non-dischargeability, meaning Plaintiffs are entitled to summary judgment only if there exists no genuine issue of material fact as to each essential element under either §§ 523(a)(2)(A), (a)(4), or (a)(6). Plaintiffs assert that the Requests for Admissions deemed admitted as a matter of law form the basis for a finding of non-dischargeability under any of those three sections. The Debtor's failure to respond to Plaintiffs' Motion means the demonstration of a *prima facie* case for non-dischargeability entitles them to judgment as a matter of law.

*Deemed Admissions as Summary Judgment Evidence*

In this case, the bulk of Plaintiffs' summary judgment evidence consists of admitted matters arising from the unanswered Requests for Admissions. Federal Rule of Civil Procedure 36(a), as incorporated into adversary proceedings in bankruptcy cases by Federal Rule of Bankruptcy Procedure 7036, states in relevant part:

> A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request....
>
> The matter is deemed admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter....

FED. R. CIV. P. 36(a).

Pursuant to Rule 36(a), litigants may request admissions on a broad range of matters. Such breadth "allows litigants to winnow down issues prior to trial and thus focus their energy and resources on disputed matters." *Carney v. IRS (In re Carney)*, 258 F.3d 415, 419 (5th Cir. 2001) (citing 8A Wright, Miller & Marcus, FEDERAL PRACTICE AND PROCEDURE §2254 (2d ed. 1994)). A failure by a party to timely respond to a request for admission results in an admission by that party to the tendered statement. It is widely recognized that, in order to promote the efficient preparation for trials, "litigants must be

able to rely on the fact that matters admitted will not later be subject to challenge." Thus, the Fifth Circuit "has stressed that a deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b)." *Id*. In the absence of a timely motion to withdraw or amend that is subsequently granted,[28] a fact deemed admitted pursuant to Rule 36 must be enforced against the defaulting party. *Id*. at 418.

Each matter presented for which an admission was sought was separately set forth in Plaintiffs' discovery requests. Despite being granted an extended period within which to tender appropriate responses to the requests for admission, the Debtor failed to provide any response to the requests. Therefore, by the plain language of the Rule, the requests are deemed admitted as earlier set forth.

*Analysis of § 523 Causes of Action*

Plaintiffs' Motion requests judgment as a matter of law on three different sections regarding the non-dischargeability of the debt purportedly owed under § 523: (a)(2)(A), (a)(4), and (a)(6). After applying all of the deemed admissions to the elements of each section, the first two are clearly inapplicable. Section 523(a)(2)(A), which excepts from discharge a debt obtained by "false pretenses, a false representation, or actual fraud..." nonetheless requires, according to the Fifth Circuit, a representation of some kind by the

---

[28] The granting of a timely motion is still within the sound discretion of the court. In order to allow the withdrawal of a deemed admission, a trial court must find that such withdrawal: (1) would serve the presentation of the case on its merits, but (2) would not prejudice the party that obtained the admission in its presentation of the case. *Carney*, 258 F.3d at 419. "However, even if these two factors are established, the court is not required to release the defaulting party from the deemed admission. *Id*.

Debtor with intent to deceive the creditor and upon which the creditor actually and justifiably relied to his or her detriment. *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005); *RecoverEdge v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995). Though Plaintiffs' admission requests were ostensibly designed to encompass the necessary elements, the Court is unable to conclude from the summary judgment evidence that the necessary representation took place. The only applicable evidence submitted are admissions relating to the Debtor's use of "false pretenses," "false representations," and "actual fraud,"[29] but these admissions are insufficient. Rather than issues of fact, they request admission of legal conclusions. Deemed admissions relate to facts, not legal matters. *See In re King*, 2006 WL 3861097 *5 (Bankr. W.D. Tex. 2006) (*citing Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 803 (3rd Cir. 1992); 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE & PROCEDURE, § 2255 at 534 (2d ed. 1994)).[30] Without evidence of the specific representation or representations made by the Debtor and upon which Plaintiffs relied, the Court cannot grant judgment as a matter of law on the §523(a)(2)(A) cause of action.

Plaintiffs' claim under § 523(a)(4) similarly fails for lack of any evidence of a fiduciary relationship between the Debtor and Plaintiffs. Again, Plaintiffs' Requests include an admission that the Debtor "obtained money by fraud and/or defalcation while

---

[29] *See* Plaintiffs' Ex. A at 20-21, Requests for Admissions Nos. 59-62.

[30] This problem arises throughout Plaintiffs' Requests for Admission, which included a number of "admissions" on legal matters not covered by Rule 36(a).

acting in a fiduciary capacity"[31] but did not describe the factual underpinning under which that capacity allegedly arose or to whom the Debtor supposedly owed fiduciary duties. The bare admission fails to reveal whether the Debtor was a fiduciary of the Plaintiffs, Huntington State Bank, or some unnamed third party. The existence of a fiduciary relationship *with the creditor* arising from an express or technical trust is a necessary element for recovery under this section without which Plaintiffs cannot prevail under §523(a)(4), particularly as a matter of law. *Texas Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 (5th Cir. 1998) (emphasis added). The statute applies only in situations where *this* debtor served as a fiduciary of *this* creditor, a fact not established by the summary judgment evidence in this case. Therefore, summary judgment on the Plaintiffs' § 523(a)(4) claim must also be denied.

The Plaintiffs' final cause of action seeks a determination of non-dischargeability under § 523(a)(6). Section 523(a)(6) of the Bankruptcy Code provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt...
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

11 U.S.C. § 523(a)(6).

In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court significantly narrowed the scope of debts that could be deemed non-dischargeable under

---

[31] Plaintiffs' Ex. A at 22, Requests for Admissions No. 72. This admission is actually repeated verbatim in Request for Admission No. 73, as well.

§523(a)(6). The *Geiger* decision clearly requires that an actor inflict a deliberate or intentional injury, not merely that an actor take a deliberate or intentional act that leads to injury. As subsequently interpreted by the Fifth Circuit, a recovery under §523(a)(6) for a "willful and malicious injury" now requires proof that such injury arose from a deliberate and intentional act by a debtor that was inflicted under circumstances evidencing either: (1) an objective substantial certainty of harm; or (2) a subjective motive to cause harm. *Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998), *cert. denied, Miller v. J.D. Abrams, Inc.*, 526 U.S. 1016 (1999); *see also Caton v. Trudeau (In re Caton),* 157 F.3d 1026, 1029 (5th Cir. 1998).

In this case, the deemed admissions establish that the debtor intentionally accessed Plaintiffs' bank accounts at Huntington State Bank without authorization for the purpose of replacing Plaintiffs' legitimate electronic transactions with fraudulent drafts. The entire scheme was designed to divert Plaintiffs' funds to an undisclosed third party and to ensure, through the interception of any notices of nonpayment to Plaintiffs, that his diversion of funds would remain concealed. As a result, the Debtor improperly diverted approximately $103,063.07 of Plaintiffs' funds either to himself or a third party with the intent of depriving the Plaintiffs of the use of those funds. That constituted a conversion of the Plaintiffs' funds. In cases in which a conversion was performed knowingly, intentionally, or deliberately, as established by the admitted facts, such an act of conversion will constitute a willful and malicious injury within the meaning of the exception. *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R.

682, 699 (Bankr. E.D. Tex. 2009); *Cybuski v. Utley (In re Utley)*, 2010 WL 3342242, at *4 (Bankr. E.D. Tex. 2010) (*citing Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc*., 783 F.2d 480, 486 (5th Cir.1986)); see also, 4 COLLIER ON BANKRUPTCY ¶ 523.12[4] at p. 523-96 (16th ed. 2009). By knowingly and deliberately engaging in an unauthorized diversion of the Plaintiffs' funds from the Huntington bank account, the Debtor acted in a manner substantially certain to cause financial loss and injury to the Plaintiffs, the Debtor inflicted a willful and malicious injury upon the Plaintiffs as a matter of law. Thus, based upon the uncontested and admitted facts, the debt arising from the Debtor's wrongful conduct is non-dischargeable under §523(a)(6) as a matter of law.

*Plaintiffs' Request for Attorney's Fees and Costs*

In addition to a judgment of non-dischargeability, Plaintiffs' Motion for Summary Judgment requests an award of the attorney's fees and costs associated with pursuing this litigation in the amount of $18,797.41. Plaintiffs' "Affidavit of Defense Counsel" states that these fees and costs are both reasonable and necessary, and occurred as a direct result of the Debtor's "deliberate, willful, and fraudulent" acts. Generally, the "American Rule" precludes any recovery of fees and costs to the prevailing party in federal litigation. *See Luce v. First Equipment Leasing Corp. (In re Luce)* 960 F.2d 1277, 1286 (5th Cir. 1992) (*citing Jordan v. Southeast Nat'l Bank (In re Jordan)*, 927 F.2d 221, 227 (5th Cir. 1991)). Only when a contractual relationship between the parties authorizes the recovery of such fees, or when such a right is statutorily conferred, can such a fee award be granted.

As alleged in the Southern District complaint against the Debtor, and as admitted by the Debtor in the deemed admissions, the unauthorized electronic fund transfers[32] perpetrated by the Debtor constituted violations of the Electronic Funds Transfer Act, 15 U.S.C. §1693 *et. seq*, and in addition to authorizing the recovery of any actual damages suffered by a consumer arising from such violations, the Act authorizes a recovery of attorney's fees from the liable party as a component of the recovery authorized by the Act.[33] Accordingly, the Plaintiffs are entitled to recover the sum of $18,797.41 in attorney's fees and costs under the well-established jurisprudence that an award of attorneys' fees attributable to efforts to secure a determination that a particular debt is non-dischargeable also renders those fees non-dischargeable. *Gober v. Terra+Corp. (In re Gober)*, 100 F.3d 1195, 1208 (5th Cir. 1996); *Luce v. First Equipment Leasing Corp. (Matter of Luce)*, 960 F.2d 1277, 1286 (5th Cir. 1992); *Viking Dynamics, Ltd. v. O'Neill (In re O'Neill)*, 260 B.R. 122, 129-30 (Bankr. E.D. Tex. 2001).

---

[32] Subject to certain exceptions, such an incident is defined in the Electronic Funds Transfer Act as "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." 15 U.S.C. §1693a(12).

[33] 15 U.S.C. §1693m(a) provides that:

...any person who fails to comply with any provision of this subchapter with respect to any consumer...is liable to such consumer in an amount equal to the sum of ---

> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

**Conclusion**

For the reasons stated above, the Court concludes as a matter of law that the Plaintiffs, Dr. Robert Woodrome and Woodrome Medical, P.A., are entitled to recover from the Defendant, Debtor-Defendant, Willard T. Scott, II, the sum of $103,063.07, plus an award of attorneys' fees in the amount of $18,797.41, for a total judgment amount of $121,860.48, together with post-judgment interest upon all such sums at the current federal post-judgment interest rate of 0.16% until paid. All such indebtedness is declared to be non-dischargeable pursuant to 11 U.S.C. §523(a)(6). All other relief sought by the Plaintiff's Motion for Summary Judgment shall be denied. An appropriate order and a judgment will be entered which are consistent with this opinion.

Signed on 02/25/2013

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE